Shannon BRINKLEY, d/b/a Krane-Ko Vending, Appellant,

v.

TEXAS LOTTERY COMMISSION, Appellee.

No. 03–97–00252–CV

Court of Appeals of Texas, Austin.

Feb. 4, 1999.

---

Ira E. Tobolowsky, Tobolowsky & Burk, P.C., Dallas, for Appellant.

John Cornyn, Atty. Gen., Matthew L. Rienstra, Asst. Atty. Gen., Admistrative Law Division, Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and POWERS.*

* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. "Gambling device" means any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance. The term:

\* \* \*

JOHN POWERS, Justice (Retired).

Shannon Brinkley sued the Texas Lottery Commission to obtain a declaratory judgment that certain machines, denominated "eight-liners," are not "gambling devices" as defined by the Texas Penal Code. *See* Tex. Penal Code Ann. § 47.01(B)(4) (West Supp. 1998). He applied for an injunction against enforcement of any criminal or administrative penalties for operating "eight-liners," and in a civil-rights action prayed for compensatory damages. The trial court dismissed his causes of action for want of jurisdiction. Brinkley appeals. We will affirm the judgment.

## THE CONTROVERSY

The Bingo Enabling Act, administered and enforced by the Texas Lottery Commission, provides as follows:

> A game of chance other than bingo ... may not be conducted or allowed during an occasion when bingo is played.... This subsection does not prohibit the exhibition and play of an amusement machine that is not a gambling device as defined by Section 47.01, Penal Code.

Tex.Rev.Civ. Stat. Ann. art. 179d, § 11(k) (West Supp.1998). Section 47.01 of the Penal Code defines "gambling device."[1]

The Commission licenses and regulates some 2,500 bingo-parlors. Many licensees allow the operation of "eight-liners" in their parlors. Eight-liners are electronic machines (similar to "slot machines") that dispense gift certificates redeemable for prizes. The machines do not all operate in the same manner; their operation and payout can be configured in a variety of ways.

> (B) does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

Texas Penal Code Ann. § 47.01(4)(B) (West Supp.1998).

The Commission received numerous complaints and inquiries from licensees who were uncertain about whether the particular machines in their parlors were set up to operate legally. In response, the Commission sent to its licensees letters setting forth criteria by which the licensees might ascertain the legal status of machines in their parlors. The letters included a warning that illegally operated machines exposed licensees to administrative and criminal penalties.[2] The Commission noted in the letters that application of the stated criteria would not necessarily determine the legality of the machines and "the agency cannot guarantee that the use of the eight-liners is necessarily legal." The letters concluded: "we hope this helps answer questions you may have in regard to this issue."

Brinkley does not hold a Commission license to operate a bingo parlor. He owns several eight-liners that he formerly operated in a space he leases within a licensed bingo parlor. When Brinkley's lessor received the Commission's letters, he refused to allow Brinkley to continue the operation of his eight-liners in the bingo parlor.

Brinkley pleaded against the Commission the following causes of action:

(1) An action under the Uniform Declaratory Judgments Act for a judicial determination that eight-liners are not gambling devices under section 47.01(4)(B) of the Texas Penal Code, and that the Commission's interpretation of section 47.01 is unconstitutional;

(2) an action for declaratory judgment under section 2001.038 of the Texas Government Code that the Commission's letters constitute "rules," as defined by section 2001.003(6) of the Administrative Procedure Act, and that the "rules" are invalid because they were not formulated or adopted in compliance with the rulemaking provisions of Texas Government Code sections 2001.021–.037;[3]

(3) an application for injunction restraining the Commission and "all others" from interfering with the operation of Brinkley's eight-liners in bingo parlors, whether by raids, harassment, criminal prosecution, forfeiture and seizure of Brinkley's eight-liners, or any other way; and

(4) actions for injunctive relief and compensatory damages, under 42 United States Code sections 1983 and 1985, for violation of Brinkley's civil rights under color of state law.[4]

The Commission filed pleas to the jurisdiction, contending the trial court lacked subject-matter jurisdiction because (1) the actions were barred by the doctrine of sovereign immunity; (2) Brinkley lacked standing to assert the actions alleged; (3) the trial court lacked jurisdiction to determine legal relationships under a penal statute; and (4) there existed no justiciable controversy. The trial court denied the plea of sovereign immunity but sustained the pleas on the other grounds claimed and dismissed the actions. Brinkley contends the trial court possessed jurisdiction on the grounds discussed below.

## UNIFORM DECLARATORY JUDGMENTS ACT

■ The separation-of-powers doctrine prohibits courts from issuing advisory opinions. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993); *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333 (Tex.1969); *Morrow v. Corbin*, 122 Tex. 553, 62 S.W.2d 641, 647 (1933). The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties. *Alabama State Fed'n of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); *Texas Ass'n of Bus.*, 852 S.W.2d at 444; *Firemen's Ins. Co.*, 442 S.W.2d at 333; *California Prods. Inc. v. Puretex Lemon Juice, Inc.*, 160 Tex. 586, 334 S.W.2d 780, 783 (1960). An opinion is advisory when the judgment sought would not constitute specific relief to a litigant or affect legal relations. *Reuter v.*

**2.** The Commission may impose administrative penalties for violations of the Bingo Enabling Act. Law-enforcement authorities enforce the Texas Penal Code.

**3.** *See* Tex. Gov't Code Ann. §§ 2001.021–.037 (West 1998).

**4.** *See* 42 U.S.C. §§ 1983, 1985 (1994).

*Cordes–Hendreks Coiffures,* 422 S.W.2d 193, 196 (Tex.Civ.App.—Houston [14th Dist.] 1967, no writ). "The court will not declare rights on facts which have not arisen or adjudicate matters which are contingent, uncertain, or rest in the future." 26 C.J.S. *Declaratory Judgments,* § 28 (1956).

■ Brinkley alleged that he sustained "irreparable injury to vested property rights with no adequate remedy at law" because his lessor, "as a result" of the Commission's letters, demanded that Brinkley remove his machines. Elsewhere in his petition, Brinkley's allegations are susceptible of a construction that the letters prevent his operating his machines in other bingo parlors. We believe Brinkley's cause of action under the UDJA requires an advisory opinion. Brinkley and the Commission are the only parties to the lawsuit and Brinkley is not a licensee subject to the Commission's regulation.[5] Brinkley necessarily speculates that a declaratory judgment, holding that eight-liners are not gambling devices, may induce his lessor or other bingo-parlor licensees to allow him to operate his machines, however configured, in their parlors. This is a contingency, an uncertainty, a hypothesis upon which a court may not decide the legal issues raised in Brinkley's petition. *See Coalson v. City Council of Victoria,* 610 S.W.2d 744, 747 (Tex.1980) (suit to declare invalid city charter-amendment initiative requires advisory opinion because voters might disapprove proposed amendment); *Central Sur. & Ins. Corp. v. Anderson,* 445 S.W.2d 514, 515 (Tex. 1969) (suit for declaratory judgment that insurer liable to pay judgment, in advance of judgment against tort defendant, requires advisory opinion); *see generally Texas Ass'n of Bus.,* 852 S.W.2d at 444.[6]

## INJUNCTIVE RELIEF

■ The trial court also lacked jurisdiction to grant the injunctive relief requested.[7] Injunctions may not issue unless it is shown that the respondent will engage in or is engaging in the activity to be enjoined. *See State v. Morales,* 869 S.W.2d 941, 946–47 (Tex.1994). Brinkley seeks to enjoin the Commission and "all others" from interfering with the operation of his eight-liners in bingo parlors in any way, including the prohibition of raids, harassment, criminal prosecution, and forfeiture and seizure of his machines. Brinkley alleged only that the Commission sent the advisory letters to about 2,500 licensees. He has not alleged that the Commission threatens to impose upon him (he is not a licensee) administrative penalties nor that law enforcement authorities (not parties here) threaten to prosecute him under the criminal law. He has not alleged that the Commission, unless restrained, will enforce against him any sanction within its power to enforce. We decline to hold as a matter of law that the Commission's sending of the advisory letters to a large number of its licensees constituted a showing of "probable injury" to Brinkley. *See id.* at 946–47; *Transport Co. v. Robertson Transports, Inc.,* 152 Tex. 551, 261 S.W.2d 549, 552 (1953) (requiring showing of "probable injury" if respondent not restrained). Absent allegations of fact showing a probable injury, a court is *without jurisdiction* to grant the injunctive relief requested. *See Morales,* 869 S.W.2d at 942, 946–47; *see also Texas Employment Comm'n v. Martinez,* 545 S.W.2d

---

5. The Commission regulates amusement machines pursuant to article 179d of the Texas Revised Civil Statutes (Bingo Enabling Act) which is concerned only with those amusement machines located in bingo halls. *See* Tex.Rev. Civ. Stat. art. 179d (West 1998). Outside of bingo halls, law enforcement personnel are charged with the enforcement of Texas Penal Code section 47.01 which prohibits the use of "gambling devices." Tex. Penal Code § 47.01 (West 1994 & Supp.1998).

6. The Uniform Declaratory Judgments Act, found in the Texas Civil Practice & Remedies Code, is a procedural device for deciding cases already within a court's jurisdiction; the statute does not enlarge a court's jurisdiction so as to authorize the rendition of advisory opinions. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (West 1997); *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 444 (Tex.1993).

7. Brinkley requested injunctive relief pursuant to section 65.011 of the Texas Civil Practice & Remedies Code and section 16.29 of the Texas Business & Commerce Code (Injury to Business Reputation or Trade Name or Mark); Tex. Civ. Prac. & Rem.Code Ann. § 65.011 (West 1997); Tex. Bus. & Com.Code Ann. § 16.29 (West Supp. 1998).

876, 877–78 (Tex.Civ.App.—El Paso 1976, no writ).

## ADMINISTRATIVE PROCEDURE ACT—DECLARATORY JUDGMENT

Section 2001.038 of the Administrative Procedure Act (APA) creates a cause of action for declaratory judgment to determine the validity or applicability of an agency rule when it "is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038 (West 1998). For purposes of section 2001.038 and all other sections in Chapter 2001 of the Texas Government Code, the word "rule"

> (A) means a state agency statement of general applicability that:
>> (i) implements, interprets, or prescribes *law* or *policy*; or
>> (ii) describes the procedure or practice *requirements* of a state agency;
> (B) includes the amendment or repeal of a prior rule; and
> (C) does *not* include a statement regarding only the internal management or organization of a state agency and *not affecting private rights or procedures.*

Tex. Gov't Code Ann. § 2001.003(6) (West 1998) (emphasis added).

▇ Brinkley contends the trial court had jurisdiction of his cause of action for declaratory judgment, under section 2001.038 of the APA, because the Commission letters amounted to a "rule" as defined in section 2001.003(6). We disagree.

▇ "Not every statement by an administrative agency is a rule for which the APA prescribes procedures for adoption and for judicial review." *Texas Educ. Agency v. Leeper,* 893 S.W.2d 432, 443 (Tex.1994). This *observation refers to the fact that adminis-* trative agencies routinely issue letters, guidelines, and reports, and occasionally file briefs in court proceedings, any of which might contain statements that intrinsically implement, interpret, or prescribe law, policy, or procedure or practice requirements. Are all such statements therefore "rules" within the meaning of APA section 2001.003(6) and 2001.038? They are not for several reasons.

It does not appear that the legislature has delegated to the Commission a power to bind others by ukase—a naked proclamation contained, for example, in a letter, a set of guidelines, or a report, or by a statement in a brief filed in a court proceeding. It appears instead that the Commission may bind others generally only by a *rule* promulgated through the notice-and-comment procedures of APA sections 2001.022–.037, or bind particular litigants by the Commission's *order* adjudicating a contested case conducted under the procedures set forth in APA sections 2001.051–.147. The same is true in general of most constitutive statutes and enabling acts delegating power to administrative agencies.

The legislature intends that administrative agencies exercise effectively the powers delegated to them. *See Sexton v. Mount Olivet Cemetery Ass'n,* 720 S.W.2d 129, 137 (Tex. App.—Austin 1986, writ ref'd n.r.e.). Agencies would be reduced to impotence, however, if bound to express their views as to "law," "policy," and procedural "requirements" through contested-case decisions or formal rules exclusively; and they could not under such a theory exercise powers explicitly delegated to them by the legislature. How, under such a theory, could an agency practically express its views to an informal conference or advisory committee, or state its reasons for denying a petition to adopt a rule, or file a brief in a court or agency proceeding? *See* Tex. Gov't Code Ann. §§ 2001.021, .031, .058 (West 1998).

The foregoing are only examples derived from the APA itself. If every expression by the agency as to "law," "policy," and procedural "requirements" requires the promulgation of a formal rule, the agency could no longer exercise its "informed discretion" to choose adjudication as a means of making law and policy, rather than rulemaking, a choice we have repeatedly said an agency has when it possesses both adjudicatory and rulemaking powers. *See, e.g., Madden v. Texas Bd. of Chiropractic Exmr's,* 663 S.W.2d 622, 626 (Tex.App.—Austin 1984, writ ref'd n.r.e.); *State Bd. of Ins. v. Deffebach,* 631 S.W.2d

794, 799 (Tex.App.—Austin 1982, writ ref'd n.r.e.). If the agencies were so restricted, they would be deprived, as a practical matter, of the power to adjudicate; an agency could make valid "law" or "policy" only through the straight-jacket of rulemaking, even though the agency might be quite unable to do so for any number of reasons as noted in *El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 188–89 (Tex.1994).[8]

The very text of the APA rejects the theory that every agency pronouncement regarding "law," "policy," and procedural "requirements" requires the promulgation of a formal rule. That theory would destroy, for example, the distinction between "rules" and "policies" found in section 2001.058(b), (c), and (e); the word "policies" is rendered meaningless because under that theory "policies" could *only* exist in the form of "rules."

We need not belabor the point. The definition in section 2001.003(6) is sufficiently flexible to allow agencies to perform their functions without unnecessary procedural obstacles; the definition expressly excludes from the definition of a "rule" any agency statements regarding only the internal management or organization of an agency that *do not affect* private rights or procedures. *See* Tex. Gov't Code Ann. § 2001.003(6)(C) (West 1998). This statutory exclusion encompasses any agency statement regarding "law," "policy," or procedural "requirements" made outside the rulemaking and contested-case context; such statements have no legal effect on private persons absent a statute that so provides or some attempt by the agency to enforce its statement against a private person, as in *Madden* where the agency attempted to enforce, in the course of adjudicating a contested case, its policy of what constituted a "bona fide reputable chiropractic" school. *See Madden*, 663 S.W.2d at 626–27. At that point, an affected person may challenge, if he wishes, the validity or applicability of the agency statement on whatever grounds may be applicable. Until then, the agency's pronouncements regarding "law," "policy," and procedural "requirements" remain merely informal views, effective only upon and within the agency's internal management and organization.[9] *See Leeper*, 893 S.W.2d at 443 (state board of education resolution stating guidelines for school districts pending statutory revision); *United Parcel Serv., Inc. v. Oregon Transp. Comm'n*, 27 Or.App. 147, 555 P.2d 778, 780 (1976) (commission statement consenting to city's designation of truck route); *Reynolds Sch. Dist. v. Oregon Sch. Employees*, 58 Or.App. 609, 650 P.2d 119, 123 (1982) (agency statement made in adjudication of previous contested case); *United States v. Fitch Oil Co.*, 676 F.2d 673, 678 (Temp.Emer.Ct.App.U.S.1982) (statement of Secretary of Energy); *Durnin v. Allentown Fed. Sav. and Loan Ass'n*, 218 F.Supp. 716, 721 (E.D.Pa.1963) (letter from supervisory agent of Federal Home Loan Bank Board); 1 Davis and Pierce, *Adminis-*

---

8. The legislature may, by statute, require an agency to make formal rules with regard to particular matters. *See Railroad Comm'n v. Shell Oil Co.*, 146 Tex. 286, 206 S.W.2d 235, 241 (1947). The agency would be bound, of course, to enact rules in compliance with the legislative mandate. It may also be that a constitutional provision requires, in particular circumstances, that the agency promulgate a formal rule before attempting to bind private persons by the agency's view of "law," "policy," or procedural "requirements." *See, e.g., Madden v. Texas Bd. of Chiropractic Exmr's*, 663 S.W.2d 622, 626–27 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Such matters are not involved in the present controversy.

9. The letters sent by the Commission in this instance were, on their face, simply advisory guidelines; they did not purport to express a final opinion on the legality of eight-liners of any particular kind. We have previously noted the valuable role such advisory opinions serve in administration. *See Texas Comm'n of Licensing and Regulation v. Model Search America, Inc.*, 953 S.W.2d 289 (Tex.App.—Austin 1997, no writ). As we stated in that opinion,

> [T]o permit suits for declaratory judgments upon mere informal, advisory, administrative opinions might well discourage the practice of giving such opinions, with a net loss of far greater proportions than any possible gain.

*Id.* at 293 quoting, *Helco Prods. Co. v. McNutt*, 137 F.2d 681, 684 (D.C.Cir.1943). Considering the number of bingo-parlor licensees and the variety of ways in which eight-liners can be configured, the practical value of the letters is obvious. Nothing in the letters purports to foreclose an individual licensee from seeking, if he wishes, a formal opinion from the Commission regarding particular eight-liners. While private parties may voluntarily comply with such guidelines, they are not legally bound to do so.

*trative Law Treatise* § 3.5 at 120 (3d ed.1994).[10]

Accordingly, we hold the Commission's letters were not rules within the meaning of APA section 2001.038, authorizing suits for declaratory judgment in district court.

## CIVIL–RIGHTS ACTIONS

Brinkley also requested injunctive relief and damages under 42 United States Code sections 1983 and 1985. Section 1983 provides as follows:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C.A. § 1983 (1994) (emphasis added). Section 1985 prohibits a "conspiracy" by two or more "persons" to deprive another of constitutional rights under color of state law. *See* 42 U.S.C.A. § 1985 (1994).

■■■ Section 1983 applies only to "persons" as that term is used in the statute. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 63–70, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). States are not "persons" as that term is used in section 1983. *Id.* at 71, 109 S.Ct. 2304. Governmental entities that are considered "arms of the State" are also not persons under section 1983. *Id.* at 70, 109 S.Ct. 2304. When a litigant seeks relief from the acts of a state agency under section 1983, he must therefore sue an individual in authority at an agency as opposed to the agency itself. *See Ntreh v. University of Tex. at Dallas,* 936 S.W.2d 649, 652 (Tex.App.—Dallas 1996), *aff'd as modified,* 947 S.W.2d 202 (Tex.1997).

10. The first Commission letter stated:
TO ALL BINGO LICENSEES:
The Texas Lottery Commission has received complaints regarding the use of gambling devices at locations where bingo is being conducted. The specific complaints concern the operation of devices popularly known as "Eight Liners."
The Texas Lottery Commission considers these devices to be gambling devices as defined by Section 47.01(4) of the Texas Penal Code, *as a result of the method of operation and payoff of these devices.*
Please be aware that Section (11(k)) of the Bingo Enabling Act, Texas Revised Civil Statutes Article 179d, provides the following: "A game of chance other than bingo may not be conducted or allowed during an occasion when bingo is played. This subsection does not prohibit the exhibition and play of an amusement machine that is not a gambling device as defined by Section 47.01, Penal Code."
Therefore, effective September 1, 1996, the Commission will refer *any incident of use* by a licensee of the aforementioned device(s) *in an illegal manner* which is detected after September 1, 1996 to the appropriate law enforcement agency for criminal prosecution and will initiate an appropriate administrative disciplinary action.
This notice is intended to *make licensees aware* of the agency's position and to *afford an opportunity* to licensees for voluntary compliance.

(Emphasis added). The letter was signed by the Commissioner's Security Director.
The follow-up letter stated:
> [T]he agency received complaints regarding the use of "Eight liners" at locations where Bingo is being conducted.
> Based on a follow-up of those complaints, the agency considers these "eight-liners" *at those locations* to be gambling devices, *as a result of the method of operation and payoff* of *those* machines.
> The purpose of the August 15, 1996 letter was to notify licensees of the agency's position and to afford licensees an opportunity for voluntary compliance.
> We have received numerous calls since the August 15, 1996 letter was sent. To help you determine whether an "Eight-liner" located in your Bingo location is not an amusement machine ... the agency's position is that the "Eight-liner" is a gambling device ... and is therefore illegal. Even if the answer to every question is "no," the agency cannot guarantee that the use of the "Eight-liner" is necessarily legal.
> We hope this helps answer questions you may have in regards to this issue. Please contact [the Security Director] should you have any further questions.
(Emphasis added.)

The doctrine of sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials, against lawsuits for damages, absent legislative consent to sue the State. *See Federal Sign v. Texas S. Univ.,* 951 S.W.2d 401, 405 (Tex. 1997); *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 152–53 (1960); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The Texas Lottery Commission is an "arm of the State" and not a person under section 1983. If the Commission is not a person for purposes of section 1983, it is not a person for purposes of section 1985. *See State v. Biggar,* 848 S.W.2d 291, 295 (Tex.App.—Austin 1993), *aff'd,* 873 S.W.2d 11 (Tex.1994). Because sections 1983 and 1985 are inapplicable to the Commission, the sole defendant in Brinkley's action, and he has not obtained legislative consent to sue the State, we hold the trial court did not err in dismissing for want of subject-matter jurisdiction Brinkley's claims under sections 1983 and 1985.[11] *See Ntreh,* 936 S.W.2d at 652.

Having concluded that the trial court was without jurisdiction to render judgment on Brinkley's claims for compensatory damages and for declaratory and injunctive relief, we affirm the judgment below.

---

**11.** We must uphold a correct lower court judgment on any applicable legal theory, even if the court gives an incorrect reason for its judgment. *Guaranty County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986).