**TEXAS ALCOHOLIC BEVERAGE COMMISSION, Appellant,**

v.

**AMUSEMENT AND MUSIC OPERATORS OF TEXAS, INC., Appellee.**

No. 03–98–00579–CV.

Court of Appeals of Texas, Austin.

May 6, 1999.

Opinion on Rehearing July 29, 1999.

John Cornyn, Atty. Gen., W. Reed Lockhoof, Asst. Atty. Gen., Law Enforcement Defense Div., Austin, for appellant.

Jennifer S. Riggs, Hill, Gilstrap, Adams & Graham, Austin, for appellee.

Barry Bishop, Clark, Thomas & Winters, Austin, for Veterans of Foreign Wars, Dept. of Texas.

Before Justices JONES, B.A. SMITH and YEAKEL.

· BEA ANN SMITH, Justice.

This case comes before us on an interlocutory appeal from a temporary injunction. The Amusement and Music Operators of Texas, Inc. ("AMOT") filed a declaratory judgment action against the Texas Alcoholic Beverage Commission (the "Commission"); Doyne Bailey, the Administrator of the Commission; the Department of Public Safety; and Dudley Thomas, the Director of the Department of Public Safety. AMOT challenged the constitutionality of a Commission memorandum and interoffice communication interpreting the definition of "gambling devices" in section 47.01 of the Texas Penal Code as applied to certain machines called "eight-liners." The trial court issued a temporary injunction enjoining those agencies from relying on the memorandum and the first two paragraphs of the interoffice communication. In seven issues, the Commission appeals the temporary injunction issued. We will affirm the trial court's order.

## BACKGROUND

AMOT is an association of amusement and music operators. The members of AMOT engage in the business of owning and/or operating coin-operated machines, including amusement machines known as "eight-liners." Eight-liners are electronic machines, similar to slot machines, that dispense gift certificates redeemable for prizes.

Before 1993, the Texas Penal Code made the possession and operation of all gambling devices illegal. However, in 1993, the legislature amended the Penal Code's definition of "gambling devices" to exclude

electronic, electromechanical, or mechanical contrivance designed, made,

and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.[1]

Tex. Penal Code Ann. § 47.01(4)(B) (West Supp.1999). AMOT members relied on the plain language of this statute and on discussions with county prosecutors and police officers before entering the business of owning and operating eight-liners.

In 1998, the attorney general's office issued an opinion ruling that the amended definition of gambling devices violated the Texas Constitution because it purports to authorize the operation of certain lotteries not contemplated by the constitution. *See* Att'y Gen. Op. DM–466 (Jan. 23, 1998). The Texas Constitution requires the legislature to pass laws prohibiting all lotteries or gift enterprises other than those specifically authorized by the constitution. *See* Tex. Const. art. III, § 47(a). Because the Texas Constitution allows for no exemptions to the lottery ban other than those enumerated,[2] the attorney general concluded that the exemption in section 47.01(4)(B) is unconstitutional. The attorney general stated in his opinion that "if the contrivances described as 'eight-liners' fit the Penal Code's definition of 'gambling device,' freed of the unconstitutional 1995 exception in paragraph (B), their possession is proscribed." Att'y Gen. Op. DM–466.

In reliance on this opinion, the Commission drafted and distributed two memoranda to its law enforcement agents. The first memorandum, dated February 9, 1998

---

**1.** This language appears in the 1995 amendment. However, the substance of this amendment was adopted in 1993. *See* Att'y Gen. Op. DM–466 (Jan. 23, 1998).

**2.** The Texas Constitution permits the legislature to authorize bingo games conducted by a church or other nonprofit organization, charitable raffles, and a state lottery. *See* Tex. Const. art. III, §§ 47(b), (d), (e).

and written by Doyne Bailey ("February 9, 1998 memo"), explained that the attorney general had determined that the statute should be read to delete Paragraph (B), and listed the three elements that make a machine illegal according to the attorney general's opinion: (1) the machine awards a prize, even if it is a prize of very small value or a redeemable coupon for anything of value; (2) the prize is awarded by chance; and (3) the player gives consideration for the opportunity to win a prize. The second memorandum, an interoffice communication written by James S. Smelser ("Smelser memo"), also listed the three elements as the basis for probable cause against gambling devices, and stated: "If in your investigation you have probable cause to believe that games violate the elements in § 47.01(4)(A) then the defense under § 47.01(4)(B) is not applicable."

AMOT filed suit to enjoin the Commission and the Department of Public Safety from relying on these memoranda in enforcing the provisions of the Texas Penal Code governing the operation of gambling devices. The Veterans of Foreign Wars, Department of Texas, intervened in support of the injunctive suit. AMOT alleged that the enforcement of the internal memoranda violated their rights to due process under the law, and challenged the authority of the two agencies to suspend section 47.01(4)(B) of the Texas Penal Code pursuant to an opinion of the attorney general. The defendants filed a plea to the jurisdiction. At a hearing on the temporary injunction held July 14, 1998, the trial court indicated that it was granting the plea to the jurisdiction on the grounds that AMOT lacked associational standing to pursue its constitutional claims. On October 5, 1998, however, the trial court ruled that AMOT did have standing to pursue its claims under the Administrative Procedure Act[3] ("APA"), and found that the two memoranda constituted invalid rules because they were not passed in accordance with the APA's rulemaking requirements. The court therefore ordered that the defen-

dants were temporarily enjoined from relying on the February 9, 1998 memo and the first and second paragraphs of the Smelser memo.

On appeal, the Commission argues that (1) the temporary injunction is void because it was denied notice and a hearing on the issues addressed in the order; (2) the trial court lacked subject matter jurisdiction; (3) the trial court erred in finding that the memoranda constitute rules under the APA; (4) the trial court lacked subject matter jurisdiction to enjoin the enforcement of a criminal law matter; (5) the trial court erred in construing section 47.01(4)(B) of the Texas Penal Code as an exemption; (6) the trial court erred in concluding that the Smelser memo directed agents to ignore section 47.01(4)(B); and (7) the trial court's order is void because it seeks to enjoin a state agency.

### DISCUSSION

▮ The purpose of a temporary injunction is to preserve the status quo of the subject matter of a suit pending final disposition of the case on its merits. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex. 1978). Because of this limited purpose, the trial court has broad discretion to determine whether to issue a temporary injunction. *See LeFaucheur v. Williams,* 807 S.W.2d 20, 22 (Tex.App.—Austin 1991, no writ). We therefore may reverse the trial court's order granting a temporary injunction only for a clear abuse of discretion. *See Walling v. Metcalfe,* 863 S.W.2d 56, 57–58 (Tex.1993); *Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981).

*Notice*

▮ In its first issue on appeal, the Commission contends that it was denied notice and a hearing on the substance of the temporary injunction in violation of Rule 681 of the Texas Rules of Civil Procedure. The Commission concedes that a hearing was held on the temporary injunc-

---

3. *See* Tex. Gov't Code Ann. ch. 2001 (West 1999).

tion, but argues that no "live" pleading filed by AMOT prior to the day of the hearing discussed whether the February 9, 1998 memo or the Smelser memo were "rules" within the meaning of the APA. AMOT's supplemental petition, on file at the time of the hearing, briefed the applicability of the APA to the two memoranda. However, the Commission argues that the trial court explicitly stated that it had not looked at the supplemental petition at the time of the hearing. The Commission therefore believes that it did not have adequate notice and opportunity to be heard on the issue that became the basis for the trial court's issuance of the temporary injunction.

Rule 681 states that no temporary injunction shall be issued without notice to the adverse party. Tex.R. Civ. P. 681. In *City of Austin v. Texas Public Employees Ass'n,* 528 S.W.2d 637, 640 (Tex.Civ.App.—Austin 1975, no writ), this Court held that the requirement of notice impliedly requires an adequate opportunity to be heard. After reviewing the record, we find that the Commission had adequate opportunity to be heard on the question of whether the internal memoranda constituted invalid rules under the APA. During the hearing on the temporary injunction, counsel for AMOT elicited testimony from the Commission's witnesses regarding the procedures followed in promulgating the internal memoranda and whether they complied with APA requirements. The Commission was therefore on notice that the applicability of the APA was an issue before the court, and had the opportunity to present evidence as to whether it had complied with the APA, or in the alternative, why it was not required to do so.

Moreover, AMOT's amended petition, filed after the hearing, specifically pleaded that the directives issued in the memoranda were invalid rules. The Commission responded to these allegations in a subsequently filed pleading, arguing that the internal memoranda were not rules and therefore were not subject to APA requirements. Obviously, the Commission understood that the applicability of the APA was at issue because it briefed the matter in its reply to the amended petition. All of these pleadings were on file before the trial court when it issued the temporary injunction. We fail to see how the Commission was deprived of its opportunity to be heard under Rule 681. We therefore overrule the Commission's first issue on appeal.

*Subject Matter Jurisdiction*

In its second and fourth issues on appeal, the Commission argues that the trial court lacked subject matter jurisdiction to issue the temporary injunction. First, the Commission contends that AMOT lacks associational standing to bring suit on behalf of its members because AMOT cannot meet the third prong of the *"Hunt* test" for associational standing adopted by the Texas Supreme Court in *Texas Ass'n of Business v. Air Control Board,* 852 S.W.2d 440, 447–48 (Tex.1993). According to the *Hunt* test, an association may sue on behalf of its members when (1) its members could otherwise sue on their own; (2) the interests the association seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *See id.* at 447 (adopting test from *Hunt v. Washington State Apple Advertising Commission,* 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)).

At the July 14 hearing, the trial court stated that AMOT could not meet the third part of the *Hunt* test. The court based this determination on the fact that AMOT sued for a declaration that seizure of its eight-liner machines by agents of the Commission would be unconstitutional, and for an injunction prohibiting such seizure. Either form of relief, the court ruled, would require proof of the individual circumstances by the aggrieved establishment that had an eight-liner seized. In the temporary injunction order, the trial court granted the Commission's plea to the jurisdiction only with respect to the search and

seizure and due process claims[4] raised in AMOT's first amended petition. The court denied the plea to the jurisdiction with respect to the remainder of the AMOT's claims.

AMOT's inability to meet the *Hunt* test with respect to its constitutional claims did not preclude it from suing on behalf of its members for other relief. AMOT could still sue to enjoin the Commission from relying on invalidly promulgated rules because that action does not require the participation of individual members.[5] The trial court therefore did not err in restricting its grant of the defendants' plea to the jurisdiction and ruling that it had subject matter jurisdiction to hear the remainder of AMOT's claims.

■ The Commission also argues that the trial court did not have subject matter jurisdiction because AMOT's claims were not ripe. As discussed above, the trial court's order preserved only the declaratory and injunctive relief sought by the association to prevent the Commission from enforcing an illegal rule. The claims pursued by AMOT do not require proof of individual prosecution against its members. The contention is simply that the Commission adopted what is effectively a rule without complying with the rulemaking procedures mandated by the APA. If AMOT has standing to contest the validity of this rule, which we have determined that it does, then the claim is ripe. We therefore overrule the Commission's second issue on appeal.

■ In its fourth issue, the Commission argues that the trial court lacked subject matter jurisdiction to enjoin the enforcement of a criminal law matter. However, there was no criminal law matter before

the trial court. The issue was whether the memoranda constituted an invalid rule of an administrative agency. The fact that the rule interpreted a provision of the Penal Code is ancillary to the administrative question before the trial court.

■ The Commission suggests that the only challenge to the memoranda available to members of AMOT is arrest and trial, at which point the aggrieved establishments could challenge the constitutionality of the rule. The cases cited by the Commission are inapposite to its position. They stand either for the proposition that a civil appellate court cannot review an injunction of an enforcement of a criminal statute, *see, e.g., Dearing v. Wright*, 653 S.W.2d 288, 289 (Tex.1983), or for the proposition that a trial court cannot entertain an equitable action determining the illegality of a statute absent a showing of irreparable injury to vested property rights, *see, e.g., State v. Morales*, 869 S.W.2d 941, 945 (Tex.1994); *Coalson v. City Council of Victoria*, 610 S.W.2d 744, 747 (Tex.1980); *Texas Liquor Control Bd. v. Canyon Creek Land Corp.*, 456 S.W.2d 891, 894 (Tex.1970). What AMOT challenges, however, is the enforcement of an *agency rule*. The Commission's position that section 47.01(4)(B) of the Penal Code is unconstitutional and can be ignored is based only on an attorney general's opinion, not on a decision by a court of law. An attorney general's opinion, while persuasive, is not the law, *see Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex.1996), and is not immune from the trial court's jurisdiction or our review.[6] We overrule this fourth issue on appeal.

---

4. AMOT complained that, in violation of due process, the Commission issued administrative sanctions to members of AMOT for operating eight-liners without providing for notice and a hearing on the alleged violations.

5. In its brief, the Commission asserts that the remaining claims and relief sought by AMOT *do* require the participation of individual members in the lawsuit. However, the Com-

mission has waived this argument by failing to provide any authority or support for what is merely a conclusory statement. *See* Tex. R.App. P. 38.1(h).

6. For these reasons, we also reject the Commission's contention that AMOT has come into court with unclean hands because it is operating "illegal" eight-liner machines.

*Determination that the Interoffice Memoranda are "Rules" Under the APA*

The Commission contends that the trial court erred in holding that the February 9, 1998 memo and the Smelser memo are rules under the APA. The Commission's argument is twofold. First, it argues that the APA is not applicable to the Penal Code because the Code of Criminal Procedure is the only procedural act with authority to instruct how criminal statutes are to be enforced. The Commission observes that no provision of the Code of Criminal Procedure instructs law enforcement to consult the APA when determining proper procedure to follow in enforcing the Penal Code. Furthermore, article 1.27 of the Code of Criminal Procedure states that where the Code fails to provide a procedural rule, common law shall be applied and govern. Therefore, the Commission asserts, the trial court violated the Code of Criminal Procedure when it adjudged the Commission's actions in drafting memos related to the enforcement of the Penal Code under the strictures of the APA.

Put another way, the Commission's argument is essentially this: even if the memoranda would otherwise constitute rules under the APA, the Commission does not have to comply with the APA because the APA does not govern the Penal Code. We find no provision in the APA that excludes its applicability to state agencies adopting rules that interpret the Penal Code. Nor are we persuaded by the Commission's inability to identify a directive in the Code of Criminal Procedure to consult the APA for enforcement matters. We can hypothesize at least one possible explanation for the Code's failure to contain such an instruction—namely, that the legislature failed to anticipate that a state agency might adopt and implement a rule rewriting a provision of the Penal Code unless authorized by statutory amendment or judicial opinion.

In the event that the APA does apply, the Commission argues that neither the February 9, 1998 memo nor the Smelser memo satisfy the APA's definition of a rule. Section 2001.003 of the APA states that a rule

(A) means a state agency statement of general applicability that:

 (i) implements, interprets, or prescribes law or policy; or

 (ii) describes the procedure or practice requirements of a state agency;

(B) includes the amendment or repeal of a prior rule; and

(C) does not include a statement regarding only the internal management or organization of a state agency and not affecting private rights or procedures.

Tex. Gov't Code Ann. § 2001.003(6) (West 1999).

The Commission offers two arguments why the February 9, 1998 memo and the Smelser memo do not constitute rules under the APA. First, it argues that the memoranda do not reflect a policy choice of the Commission, but rather, invoke a reasonable reading of the Penal Code in conjunction with the Texas Constitution and the common law of the state. Moreover, the Smelser memo instructs Commission agents how to develop probable cause, and therefore, it more accurately constitutes a statement regarding internal management of the agency. Second, the Commission contends that the memoranda are not binding on the parties.

In order to grant a temporary injunction, the trial court was required to find that the plaintiffs established a probable injury and a probable right to recovery. *See, e.g., Omniphone, Inc. v. Southwestern Bell Tel. Co.,* 742 S.W.2d 523, 525 (Tex. App.—Austin 1987, no writ). Appellate review is limited to determining whether the trial court abused its discretion in granting the injunction. *See Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). The merits of the underlying lawsuit are not presented for review. *See id.* at 861; *Omniphone,* 742 S.W.2d at 525. In this

case, the trial court found that both memoranda set out binding practice requirements; that the requirements substantially changed previous enforcement policy by directing the agents to ignore the exemption to the definition of gambling device set out in the Penal Code; and that the memoranda directed agents to issue warning tickets and initiate enforcement actions against all eight-liners. The court therefore determined that the memos met the definition of rules under the APA, and enjoined the Commission from taking any enforcement action in reliance on the memos and from otherwise ignoring the statutory exemption set out in section 47.01(4)(B) of the Penal Code.

While the findings of the trial court read much like an order of declaratory judgment, we are restrained from reviewing more than the temporary injunction that is before us on interlocutory appeal. We therefore may not examine the merits of the declaratory judgment action brought by AMOT. After reviewing the record, we determine that AMOT has sufficiently demonstrated a probable injury and a probable right to recovery for the purposes of this temporary injunction. The testimony of the Commission's witnesses establishes that agents of the Commission not only intend to enforce, but have enforced administrative sanctions on owners and operators of eight-liner machines. AMOT has thus established facts showing probable injury. *Cf. Brinkley v. Texas Lottery Comm'n,* 986 S.W.2d 764, 768–69

(Tex.App.—Austin 1999, no pet. h.) (no probable injury where appellant failed to allege threatened administrative penalties or prosecution). We also agree that these facts are sufficient to establish a probable right to recovery. The record reflects that the Commission has adopted guidelines for enforcing the Penal Code that appear contrary to the plain wording of the statute. Those guidelines appear in the two memoranda at issue. The record also establishes that the enforcement of these guidelines affects every owner and operator of eight-liner machines in Texas. Without reviewing the merits of the claims, we find sufficient evidence to support AMOT's claim to a probable right to recovery at trial.[7] We therefore overrule the Commission's third issue on appeal.

*Construction of the Statute and the Smelser Memo*

■ In its fifth and sixth issues on appeal, the Commission argues that the trial court erred in construing Penal Code section 47.01(4)(B) as an exemption from prosecution and in reading the language of the Smelser memo to instruct agents to ignore that section. The construction of section 47.01(4)(B) is an issue that goes to the merits of the underlying lawsuit, because it informs the question of whether the memoranda were statements of policy and whether they were binding. Because we have determined that AMOT has established a probable injury and a probable right to recovery, we leave this issue to be

---

**7.** We recognize that the Texarkana Court of Appeals recently addressed a similar issue involving eight-liners in *Weaver v. Head,* 984 S.W.2d 744 (Tex.App.—Texarkana 1999, no pet.). In that case Head, an eight-liner operator, sought a declaratory judgment that Penal Code section 47.01(4)(B) is valid and constitutional, and a ruling that the attorney general has no authority to suspend the statute's operation. The trial court enjoined Weaver, the sheriff of Gregg County, from relying on Attorney General Opinion DM–466 to disregard section 47.01(4)(B) as unconstitutional. The trial court found that Weaver's use of DM–466 would violate the separation of powers provision of the Texas Constitution and that Head had vested property rights that would

be violated by prosecution based on the attorney general's opinion. *See id.* at 745.

The court of appeals reversed. It held that the trial court's injunction was improper because it did not address the constitutionality of section 47.01(4)(B) and was not in answer to any of the relief sought by Head. *See id.* at 747. The present case is distinguishable. Here, AMOT did not request a determination of section 47.01(4)(B)'s constitutionality. Instead, AMOT sought and was granted injunctive relief on the ground that the Commission's implementation of DM–466 constituted improper rulemaking in violation of the APA, a theory that was not raised in *Weaver.* We therefore find *Weaver* unpersuasive under the circumstances of the present case.

determined by the trial court on the merits.

The construction of the Smelser memo is supported by the plain language of the memo, which instructs law enforcement that if their investigation results in a finding of probable cause that a machine violates section 47.01(4)(A), "then the defense under § 47.01(4)(B) is not applicable." The Smelser memo also instructs enforcement personnel to refer to the February 9, 1998 memo, which specifically advises personnel how the statute should be read according to the view of the chief law enforcement agent of the state, the attorney general. That reading voids section 47.01(4)(B) as unconstitutional and advises that it be excluded from a reading of the statute. Under these circumstances, we believe that the trial court did not abuse its discretion in finding that the Smelser memo instructed agents to ignore the language of the Penal Code. We overrule the Commission's fifth and sixth issues on appeal.

*Injunction of a State Agency*

 The Commission's final point on appeal is that the trial court's order is void for attempting to enjoin a state agency. Ordinarily, a plaintiff must sue an individual in authority to enjoin the activities of a state agency. *See Nabejas v. Texas Dep't of Public Safety,* 972 S.W.2d 875, 876 (Tex.App.—Corpus Christi 1998, no pet.) (citing *Dillard v. Austin Indep. Sch. Dist.,* 806 S.W.2d 589, 592 (Tex. App.—Austin 1991, writ denied)). However, as discussed above, the trial court's jurisdiction over this matter was founded on the APA. It was therefore empowered to issue an injunctive order. *See* Tex. Civ. Prac. & Rem.Code Ann. § 65.011 (West 1997). We overrule the Commission's seventh issue on appeal.

## CONCLUSION

Having found that the trial court had subject matter jurisdiction over this action, and that it did not abuse its discretion in determining that the internal memoranda constituted guidelines purporting to bind agency enforcement of the Penal Code, we affirm the trial court's order granting a temporary injunction.

## ON MOTION FOR REHEARING

In a very articulate motion for rehearing, the Commission complains that our holding in this case is at odds with this court's decision in *Brinkley v. Texas Lottery Comm'n,* 986 S.W.2d 764 (Tex.App.—Austin 1999, no pet.). We write to point out the distinctions, if they were not clear earlier, between the memoranda issued here by the Alcoholic Beverage Commission and the letters sent by the Lottery Commission in *Brinkley*.

While both agency statements address the legality of eight-liners, there the similarity ends. In *Brinkley,* the Lottery Commission, which regulates bingo parlors and any eight-liners placed in those halls, warned its licensees that eight-liners could be legal or illegal, depending on how they were configured and operated. The Lottery Commission sent out two letters to some 2500 licensees describing some of the criteria that might be used by the licensee to evaluate the legality of the eight-liners in their bingo halls. The first letter stated: "This notice is intended to make licensees aware of the agency's position and to afford an opportunity to licensees for voluntary compliance." The second included a warning that the guidelines were advisory and could not be guaranteed to determine legality. We held that these letters were advisory and non-binding on the licensee:

The letters sent by the Commission in this instance were, on their face, simply advisory guidelines; they did not purport to express a final opinion on the legality of eight-liners of any particular kind. We have previously noted the valuable role such advisory opinions serve in administration.... Considering the number of bingo-parlor licensees and the variety of ways in which eight-liners can be configured, the practical value of the letters is obvious. Nothing in the letters purports to foreclose an

individual licensee from seeking, if he wishes, a formal opinion from the Commission regarding particular eight-liners. While private parties may voluntarily comply with such guidelines, they are not legally bound to do so.

*Brinkley,* 986 S.W.2d at 770 n. 9.

By contrast, the memoranda issued by the Alcoholic Beverage Commission in this case impose binding instructions on law enforcement agents that affect the private rights of all owners of eight-liners. They are agency statements that implement, interpret or prescribe law or policy; they amend or repeal a prior enforcement policy of the Commission; and they do not constitute statements regarding only the internal management or organization of the Commission without affecting private rights. Clearly, they are statements of general, not particular, applicability. In *WBD Oil & Gas Co. v. Railroad Commission of Texas,* No. 03–97–00002–CV, —— S.W.2d ——, 1999 WL 46637 (Tex.App.—Austin Feb. 4, 1999, reh'g filed), we determined that field rules of the Railroad Commission that satisfied this literal statutory definition could confer jurisdiction for a declaratory judgment action challenging the rules' validity under APA section 2001.038. *See* slip op. at 659. We follow that holding here.