The STATE of Texas, Appellant,

v.

Roland A. GLASS, Appellee.

No. 14601.

Court of Appeals of Texas,
Austin.

Jan. 14, 1987.

Jim Mattox, Atty. Gen., Christine Monzingo, Asst. Atty. Gen., Austin, for appellant.

Larry Watts, Watts & Co., Lawyers, P.C., Houston, for appellee.

Before SHANNON, C.J., and BRADY and CARROLL, JJ.

## ON MOTION FOR REHEARING

CARROLL, Justice.

The opinion and judgment of the Court in this cause handed down on August 13, 1986, are withdrawn and the following opinion is substituted therefor.

The Comptroller of Public Accounts sued Roland Glass for the collection of delinquent diesel fuel sales tax under Tex.Tax Code Ann. § 111.010 (1982 & Supp.1986). After a bench trial, the district court entered a take-nothing judgment against the Comptroller. We will reverse the judgment of the district court and render judgment in favor of appellant.

### THE CONTROVERSY

Glass, d/b/a Krystal Oil Co. and K & R Oil Co., is a supplier of gasoline products and diesel fuel. The Comptroller audited Glass for the period from April 1, 1978 through April 30, 1981, and assessed a $91,228.23 deficiency for unpaid diesel fuel tax. Glass refused to pay, and the Comptroller sued to recover the deficiency and for a preferred tax lien under Tex.Tax Code Ann. § 113.001 (1982).

The district court found that Glass was entitled to an exemption from diesel fuel tax and denied the Comptroller's claim.

### APPLICABLE STATUTES

The Comptroller brings six points of error attacking the sufficiency of the evidence brought by Glass to establish his right to an exemption under Tex. Tax Code Ann. § 153.203 (1982). However, during oral argument, the Comptroller recognized that § 153.203 was not in effect during the audit period and asserted that art. 9.201 of the Tex. Tax.-Gen.Ann. (*repealed* by Acts 1981, 67th Leg., p. 1785, ch. 389, § 39(a), effective January 1, 1982) was the controlling statute creating an exemption. Later, in a post-submission letter to this Court, the Comptroller stated that art. 10.03 of the Tex.Tax.-Gen.Ann. (Acts 1971, 62nd Leg., p. 2343–44, ch. 710, § 3 *repealed* by Acts 1979, 66th Leg., p. 626, ch. 291, § 1 effective January 1, 1980) was the appropriate statute.

We have determined that art. 10.03 controls for the period from April 1, 1978 through December 31, 1979, while art. 9.201 controls for the period from January 1, 1980 through April 30, 1981. Accordingly, we must decide if Glass sufficiently proved a right to an exemption under art. 10.03 and later under art. 9.201.

Under art. 10.03(3), the Legislature created four exemptions to the tax on the distribution or sale of diesel fuel. First, there is no tax if a licensed supplier distributes diesel fuel to (1) other suppliers holding valid permits, or (2) bonded users holding valid permits who will use the diesel fuel for predominately non-highway use. Second, the distribution or sale is not taxed where a licensed supplier delivers diesel fuel into a storage facility of a service station from which diesel fuel will be resold for non-highway use. Third, deliveries made into fuel supply tanks of railway engines, aircraft, or boats are not taxable events. Fourth, if the purchaser furnishes the seller a signed statement that none of the diesel fuel purchased in this state will be delivered by him or permitted by him to be delivered into fuel supply tanks of motor vehicles, the distribution or sale is not taxable.

Article 9.201, effective January 1, 1980, expanded the list of exemptions from diesel fuel tax set out in art. 10.03. However, only two of these exemptions are pertinent to this appeal. First, art. 9.201(1)(C) cre-

ates an exemption where a permitted supplier sells diesel fuel to another permitted supplier, to a bonded user, to the bulk storage facility of a diesel tax prepaid user, or to a purchaser who provides a signed statement of non-highway use. Under art. 9.201(1)(E), there is a tax-free distribution where a permitted supplier sells or delivers diesel fuel into the fuel supply tanks of "stationary equipment powered by a separate motor from a separate fuel supply tank."

During the audit period, the exemptions set out in arts. 9.201 and 10.03 were the only ones available to Glass to avoid tax liability for the distribution or sale of diesel fuel. Before the district court he had to *clearly* show that he came within one of these statutory exemptions for the relevant time periods.

## THE BURDEN OF PROOF

In his motion for rehearing, Glass contends that in the "interest of justice" he is entitled to a new trial since up until the initial oral argument before this Court, the Comptroller had not conclusively designated the applicable taxing provisions under which Glass was liable under. We disagree.

■ By statute, in an action for recovery of sales tax paid, the Comptroller's tax delinquency certificate is *prima facie* evidence of the justness and correctness of the State's claim. *See* Tex. Tax Code Ann. § 153.013 (1982); *Hylton v. State*, 665 S.W.2d 571 (Tex.App.1984, no writ). In order to overcome this presumption, the taxpayer must *conclusively* establish that he owes no tax. *Baker v. Bullock*, 529 S.W.2d 279 (Tex.Civ.App.1975, writ ref'd n.r.e.). Moreover, statutory exemptions from taxation are subject to strict construction since they are the "antithesis of equality and uniformity and because they place a greater burden on other tax paying businesses and individuals." *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 274 (Tex.1979). All doubts as to the availability of an exemption must be resolved in

favor of the taxing authority and against the claimant. *Id.*

■ Confronted with the *presumed* correctness of the Comptroller's deficiency certificate, it was *incumbent* upon Glass to come forward with evidence *conclusively establishing* that he owed no tax during the audited period. Glass was familiar with the individual sales the Comptroller claimed were not tax-free, and he bore the burden to conclusively establish that the sales fell within a statutory exemption available during the audited period. Had Glass produced conclusive evidence to overcome the deficiency certificate's presumed correctness, the ultimate issues would have then been decided by a preponderance of the competent evidence. *Hylton v. State*, *supra.*

## DISCUSSION AND HOLDING

■ Findings of fact and conclusions of law were requested, but none were filed. In a non-jury trial, where no findings of fact or conclusions of law are filed, it will be implied that the trial court made all the necessary findings to support its judgment. *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274 (Tex.1979). However, these "implied findings" may be challenged by "insufficient evidence" and "no evidence" points, just as jury findings and a trial court's findings of fact may be challenged by such points. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex.1980).

Glass offered two types of evidence in support of his claimed exemption under art. 10.03. First, he submitted invoices reflecting sales to various businesses from April 1, 1978 through December 31, 1979. Second, Glass testified that all of the businesses purchasing the diesel fuel used it for tax-exempt purposes. Consequently, we must decide whether this evidence, standing alone, constituted sufficient evidence to conclusively establish Glass' right to an exemption under art. 10.03.

■ As noted earlier, diesel fuel sales from a licensed supplier, such as Glass, will be exempt from the diesel fuel tax when

made to either (1) suppliers holding valid permits or (2) bonded users holding valid permits from the Comptroller entitling them to purchase tax-free diesel fuel. There is no evidence in the record indicating that the businesses buying fuel from Glass held the requisite permits. Nor does Glass' testimony, standing alone, satisfy the requirements of art. 10.03 since it would render meaningless the regulatory scheme requiring a taxpayer to keep and produce records to substantiate exclusions. *See Hylton v. State, supra.*

Glass does, however, seek to explain the absence of the statutorily prescribed records which would entitle him to an exemption by claiming that the needed records were destroyed by fire. Nonetheless, even in circumstances where fire has allegedly destroyed the needed records, we cannot accept the taxpayer's testimony on its face as conclusive evidence. In such exceptional circumstances, the taxpayer should be able to produce evidence from the purchasing businesses themselves or from the Comptroller indicating that the businesses possessed valid permits during the period in question, or at a minimum providing an explanation of why such evidence is unavailable. Absent such proof, we find the evidence legally insufficient to show that Glass is entitled to a tax-free distribution under the first exemption created in art. 10.03.

■ As to the second exemption, we find no evidence in the invoices or in Glass' testimony that diesel fuel was delivered into a storage facility of a service station from which diesel fuel was resold for non-highway use. Further, neither the invoices nor the testimony provide any evidence, much less conclusive evidence, that the diesel fuel was delivered into fuel supply tanks of railway engines, aircraft or boats. Finally, the record does not contain any signed statements by the purchasers to the effect that the diesel fuel will not be delivered or permitted to be delivered into fuel supply tanks of motor vehicles.

In summary, the total proof proffered by Glass to substantiate his claimed entitle-ment to an exemption from diesel fuel sales tax for the period April 1, 1978 through December 31, 1979 consisted of his oral testimony and various invoices reflecting sales during this time span. This proof was clearly inadequate to "conclusively" establish that Glass was entitled to the claimed exemption and, moreover, is the equivalent of no evidence. *Baker, supra.*

■ With respect to an exemption under art. 9.201, the evidence again consisted of invoices and Glass' testimony. After reviewing both, we find no evidence that the diesel fuel sold during this portion of the audit was delivered to another permitted supplier, to a bonded user, or to the bulk storage facility of a diesel tax prepaid user. Moreover, the record does not contain any signed statements of non-highway use by the purchasers. Hence, Glass failed to produce evidence which would conclusively establish his right to an exemption under art. 9.201(1)(C).

■ We do however make special mention of the invoices in Glass' exhibits 3b and 4c reflecting diesel fuel sales to Superior Fuels and Houston Natural Gas during the period covered by art. 9.201. Each invoice bears the notation "not for highway use *for drilling rigs.*" Although this notation constitutes some evidence in support of Glass' contention that those diesel fuel sales were exempt from taxation under art. 9.201(1)(E), we nonetheless find Glass' evidence, when viewed in its entirety, insufficient to fulfill his burden to provide conclusive evidence that he owes no tax. Conclusive evidence under these circumstances would entail at a minimum some evidence, other than Glass' testimony, that the diesel fuel was sold or delivered directly into the supply tanks of the stationary equipment.

The notation is also insufficient to sustain an exemption under art. 9.201(1)(C) which requires the purchaser to furnish the seller with a signed statement as delineated in art. 9.202. The Comptroller, pursuant to the authority granted in art. 9.202(6), has promulgated Texas Comp. Tax Admn. Rule No. .110 (December 11, 1979), which speci-

fies the prerequisites to be met and provides the appropriate form to be used. Not only was that form not used in this case, but we cannot say the notation otherwise satisfied the requirements of Rule No. .110. While the notation does provide more support for an exemption under art. 9.201(1)(C) than an otherwise unmarked invoice and Glass' testimony standing alone, we nonetheless find the evidence factually insufficient and therefore sustain appellant's insufficiency of evidence points concerning exhibits 3b and 4c.

We reverse the judgment of the district court and render judgment that appellant, the State of Texas, receive the full amount of tax assessed at $91,228.23, in addition to interest accrued thereon from the date payment was due.