# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00379-CV

**Sundown Farms, Inc. and Thad Sherman Burnett, Appellants**

**v.**

**State of Texas; City of Sour Lake, Texas; and County of Unspecified, Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 99-01749, HONORABLE JOHN D. DIETZ, JUDGE PRESIDING

Sundown Farms, Inc. and Thad Sherman Burnett[1] appeal a judgment after a trial to the court that they are liable to the State of Texas, the City of Sour Lake, Texas, and the County of Unspecified, Texas (collectively, Athe State@) for sales taxes not paid on oil field services rendered. Appellants contend that they conclusively showed at trial that they did not owe taxes imposed on wellsite remediation services. Although appellants contended at trial that they were not liable for any of the taxes the State sought, on appeal they request reversal and rendition of take-nothing judgment on a specified subset of the services provided and taxed. We will affirm the judgment.

---

[1] Despite the death of Thad Sherman Burnett after the inception of this appeal, we use his name (rather than that of his heirs or estate) in this opinion. *See* Tex. R. App. P. 7.1(a)(1).

## BACKGROUND

Burnett was the president of Sundown Farms, Inc. He testified that Sundown disposed of the remains of a wellsite, including byproducts of drilling such as a slush pit, displaced earth, equipment, boards, and garbage. Burnett said Sundown removed mud and water by injecting it into the well, removing it to an approved site, or spreading it around the wellsite. They also backfilled pits, removed boards, removed equipment, leveled the site, and generally tried to restore the land to its predrilling condition. He testified that the work occurred after the drilling was completed.

Burnett said he initially charged tax on his work, but his customers complained that the work was nontaxable. He said he stopped collecting tax after getting and reading opinions from the comptroller that the work as described was nontaxable; he did not provide any letter opinion written to him. Burnett testified that thereafter he requested tax exemption certificates from his customers, but they declined to furnish them because the work was nontaxable.

The State sued appellants for unpaid taxes, attaching to its petition certificates from the Texas Comptroller of Public Accounts stating the amounts of delinquent taxes. Appellants filed a sworn, written denial that they owed any of the taxes alleged to be due. At trial, the State offered the comptroller=s certificates of delinquent taxes. Burnett testified, asserting that appellants performed only tax-exempt services. He also introduced invoices that he asserted described tax-exempt services.

The district court rendered judgment for the amounts certified. The court found that Sundown owed the State of Texas $89,996.82, of which Burnett was jointly and severally liable for $72,796.76. The court also found that Sundown owed the City of Sour Lake $14,875.84, of which

2

Burnett was jointly and severally liable for $11,645.60, and owed an unspecified county $7,438.04, of which Burnett was jointly and severally liable for $5,822.88. Findings of fact and conclusions of law were requested but not filed.

## DISCUSSION

Appellants contend that the district court erred by rendering judgment for the State on the full amount of taxes requested because the evidence conclusively showed that $341,386 of the services provided were not subject to the sales tax. The State contends that the evidence does not conclusively support appellants= contention.

A taxpayer attempting to deny responsibility for taxes faces a heavy burden once the comptroller produces a certificate showing the amount of taxes that are delinquent. The certificate is *prima facie* evidence of both the delinquency and the amounts owed. Tex. Tax Code Ann. '' 111.013(a), 151.603 (West 2002). The taxpayer must file a sworn written denial that specifically identifies the taxes, penalties, and interest (and the amounts thereof) that the taxpayer asserts are not due. *Id*. ' 111.013(b). A[A] taxpayer has the burden to overcome a deficiency certificate=s presumed correctness with such evidence tending to support the contrary as would be conclusive, or evidence which would be so clear and positive it would be unreasonable not to give effect to it as conclusive.@ *Hylton v. State*, 665 S.W.2d 571, 572 (Tex. App.CAustin 1984, no writ). Statutory exemptions from taxation are subject to strict construction since they are the Aantithesis of equality and uniformity and because they place a greater burden on other tax paying businesses and individuals.@ *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 274 (Tex. 1979). All doubts as to the availability of an exemption must be resolved in favor of the

**3**

taxing authority and against the claimant. *Id*. When no findings of fact or conclusions of law are filed, we must infer that the district court made all necessary findings and conclusions to support the judgment. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 842 (Tex. 2000).

Texas imposes a sales tax on such things as the performance of taxable services or the leasing of tangible personal property. *See* Tex. Tax Code Ann. '' 151.005, 151.051 (West 2002). The gross receipts of a seller are presumed subject to the sales tax unless the seller accepts a properly completed exemption certificate. *Id.* ' 151.054; *see, e.g.*, 34 Tex. Admin. Code ' 3.356(h) (2002) (garbage collector may accept exemption certificate in lieu of taxes). A provider of services is a Aseller@ under the Tax Code. *See id.* '' 151.005, 151.008, 151.010. Thus, appellants=services were presumed taxable unless they received exemption certificates.

In *Hylton*, the court overruled a taxpayer=s complaint that the comptroller and trial court erroneously failed to reduce his tax liability by the amounts of sales that were exempt from taxation. 665 S.W.2d at 573. The taxpayer hauled and sold sand, gravel, and clay. *Id.* at 572. In response to the comptroller=s delinquency certificate, the taxpayer and his wife testified that they collected taxes on all sales in which the buyer did not produce an exemption certificate. *Id*. at 573. The taxpayer=s accountants testified that they never saw exemption certificates in the taxpayer=s files. *Id.* The taxpayer did not produce any exemption certificates received from purchasers, but the accountants said they saw invoices on which someone noted that the sale was exempt. *Id.* The court held as a matter of law that the trial court did not err by concluding that the taxpayer Afailed to present evidence which would overcome the delinquency certificate=s presumed correctness.@ *Id.* The opinion indicates that the court was influenced somewhat in

**4**

that case by the taxpayer=s deliberate destruction of his records to thwart federal agents who were investigating compliance with the Mining Safety Act. *Id*. at 572-73.

A lack of exemption certificates can defeat a taxpayer=s claim of exemption despite testimony and invoice notations indicating exemption. *State v. Glass*, 723 S.W.2d 325, 328 (Tex. App.CAustin 1987, writ ref=d n.r.e.). In *Glass*, in response to the certificate of delinquent taxes on sales of diesel fuel, the taxpayer produced invoices reflecting sales to various businesses and his testimony that Aall of the businesses purchasing the diesel fuel used it for tax-exempt purposes.@ *Id.* at 327. The district court found that the sales were exempt from tax. *Id*. at 326. The court of appeals reversed, finding that the evidence did not conclusively establish the exemption. *Id*. at 327. The court was unpersuaded by the blanket statement that all of the sales were exempt, and required more direct evidence of entitlement to an exemption. *Id*. at 328. The court was unmoved by testimony that the taxpayer=s records were destroyed by fire, opining that Athe taxpayer should be able to produce evidence from the purchasing businesses themselves or from the Comptroller indicating that the businesses possessed valid permits during the period in question [entitling them to tax-free purchases], or at a minimum providing an explanation of why such evidence is unavailable.@ *Id*. The court also held that the taxpayer failed to show conclusively that certain sales were exempt as Anon-highway use@ because the taxpayer did not produce the statutorily required signed statements of non-highway use from the producers. *Id*. at 326, 328. When the taxpayer produced invoices stating that the sale was Anot for highway use for drilling rigs,@ the court opined that A[c]onclusive evidence under these circumstances would entail at a minimum some evidence, other than Glass=testimony, that the diesel fuel was sold or delivered directly into the supply tanks of the stationary equipment.@ *Id*. at

**5**

328.  The court reversed the district court=s take-nothing judgment and rendered judgment that the taxpayer pay the amount in the delinquency certificate.  *Id*. at 329.

Appellants in this case produced records they contend overcame the delinquency certificates= presumption of validity and proved as a matter of law that the district court=s delinquency award included over $300,000 in services that were exempt from taxes.  Appellants produced no exemption certificates for any of the services provided; Burnett testified that his customers refused to supply a certificate when he performed tax-exempt services.  Although at trial appellants denied any tax liability, on appeal, they limit their claim of exemption to invoices listed in an appendix attached to their brief.  Conceding that the invoices not listed do not conclusively establish nonliability, they contend that the listed invoices describe reclamation-related services declared by the comptroller in advisory letters to be exempt from taxation.  Appellants refer to a letter opinion from the comptroller written to a taxpayer who asked about the taxable nature of cleaning up and restoring a drilling site by backfilling water, reserve, and shale pits.  Letter Op. Tex. Comptroller No. 9609L1436A03 (1996).[2]  The comptroller advised that Awhen the restoration is the actual reclamation of an oil and gas lease site to the land=s condition before the drilling activity was begun, the charge for the restoration/reclamation is not taxed.@ *Id*.  On appeal, the appellants in this case request exemption for services listed on invoices with descriptions like Apump mud and water pit

---

[2]  The State argues that this Court cannot consider these opinion letters because appellants mentioned only one of them at trial and did not introduce it into evidence.  The comptroller has posted these letters on a websiteChttp://www.window.state.tx.us/taxinfo/sales, which contains an archive that is searchable by the accession numbers in the letters.  If the opinion letters are evidence, this posting makes them susceptible to judicial notice.  *See* Tex. R. Evid. 201.  But the posting of the advisory letters with the requesting party redacted indicates that the comptroller intends these letters to guide all taxpayers.  This implicit intent makes the letters less like evidence and more like authority, albeit nonbinding authority.

down hole and backfill same,@ Apumping and closing pits,@ and Abackfilling pits.@ Burnett testified that appellants performed only exempt work.

The State contends that appellants did not show themselves conclusively entitled to exemptions. The State notes that Sundown=s letterhead indicates that it offered a variety of services and equipment related to oil production, some of which were not exempt. The State contends that appellants overstate the importance of the opinions in the advisory letters from the comptroller=s office. The State notes that the letters are not specific to appellants, are not rules, and are not binding conclusions that the services are not taxable. *See Brinkley v. Texas Lottery Comm=n*, 986 S.W.2d 764, 769 (Tex. App.CAustin 1999, no pet.). The State also notes that, even if the letters were binding, they are conditioned on the facts presented in the letters, and appellants did not prove conclusively that the services they provided fit within the fact scenarios of the letters. For instance, one of the letters describes certain services as tax-exempt when performed to restore a leased site to its predrilling condition. Letter Op. Tex. Comptroller No. 8906L0944B08 (1989). The State reasons that the letter opinion implies that such services are exempt if provided once drilling has ceased, and notes that the appellants= invoices do not show that drilling had stopped when they provided the services.

We conclude that the district court correctly determined that appellants did not produce evidence that conclusively defeats the presumption of correctness accorded the comptroller=s certificates of delinquency. Appellants did not produce exemption certificates as required to create a presumption of exemption. *See* Tex. Tax Code Ann. ' 151.054. Appellants do not cite statutes or rules providing that their work was exempt. Instead they rely on opinion letters that are not binding and were limited to

**7**

particular facts presented to the comptroller. *See Brinkley*, 986 S.W.2d at 769. Further, the invoices appellants produced are not sufficiently detailed to compel the conclusion that the services described were exempt; for instance, the invoices do not set out the circumstances surrounding the provision of servicesCi.e., the nature of the waste removed or the status of oil production at the lease site. *See Glass*, 723 S.W.2d at 328. Nor does Burnett=s general testimony that his company provided only exempt services combine with the other evidence adduced to provide conclusive proof to overcome the presumption that the certificates of delinquency are correct. *See id.*

## CONCLUSION

Because we conclude that appellants failed to produce evidence that conclusively defeated the presumed correctness of the comptroller=s delinquency certificates, we affirm the judgment.

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: October 24, 2002

Publish