TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN





NO. 03-

01-00379-CV







Sundown Farms, Inc. and Thad Sherman Burnett, Appellants



v.



State of Texas; City of Sour Lake, Texas; and County of Unspecified, Texas, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 99-01749, HONORABLE JOHN D. DIETZ, JUDGE PRESIDING







 Sundown Farms, Inc. and Thad Sherman Burnett (1) appeal a judgment after a trial to
the court that they are liable to the State of Texas, the City of Sour Lake, Texas, and the County of
Unspecified, Texas (collectively, "the State") for sales taxes not paid on oil field services rendered. 
Appellants contend that they conclusively showed at trial that they did not owe taxes imposed on
wellsite remediation services. Although appellants contended at trial that they were not liable for
any of the taxes the State sought, on appeal they request reversal and rendition of take-nothing
judgment on a specified subset of the services provided and taxed. We will affirm the judgment.


BACKGROUND


 Burnett was the president of Sundown Farms, Inc. He testified that Sundown
disposed of the remains of a wellsite, including byproducts of drilling such as a slush pit, displaced
earth, equipment, boards, and garbage. Burnett said Sundown removed mud and water by injecting
it into the well, removing it to an approved site, or spreading it around the wellsite. They also
backfilled pits, removed boards, removed equipment, leveled the site, and generally tried to restore
the land to its predrilling condition. He testified that the work occurred after the drilling was
completed.

 Burnett said he initially charged tax on his work, but his customers complained that
the work was nontaxable. He said he stopped collecting tax after getting and reading opinions from
the comptroller that the work as described was nontaxable; he did not provide any letter opinion
written to him. Burnett testified that thereafter he requested tax exemption certificates from his
customers, but they declined to furnish them because the work was nontaxable.

 The State sued appellants for unpaid taxes, attaching to its petition certificates from
the Texas Comptroller of Public Accounts stating the amounts of delinquent taxes. Appellants filed
a sworn, written denial that they owed any of the taxes alleged to be due. At trial, the State offered
the comptroller's certificates of delinquent taxes. Burnett testified, asserting that appellants
performed only tax-exempt services. He also introduced invoices that he asserted described tax-exempt services.

 The district court rendered judgment for the amounts certified. The court found that
Sundown owed the State of Texas $89,996.82, of which Burnett was jointly and severally liable for
$72,796.76. The court also found that Sundown owed the City of Sour Lake $14,875.84, of which
Burnett was jointly and severally liable for $11,645.60, and owed an unspecified county $7,438.04,
of which Burnett was jointly and severally liable for $5,822.88. Findings of fact and conclusions
of law were requested but not filed.


DISCUSSION


 Appellants contend that the district court erred by rendering judgment for the State
on the full amount of taxes requested because the evidence conclusively showed that $341,386 of
the services provided were not subject to the sales tax. The State contends that the evidence does
not conclusively support appellants' contention.

 A taxpayer attempting to deny responsibility for taxes faces a heavy burden once the
comptroller produces a certificate showing the amount of taxes that are delinquent. The certificate 
is prima facie evidence of both the delinquency and the amounts owed. Tex. Tax Code Ann.
§§ 111.013(a), 151.603 (West 2002). The taxpayer must file a sworn written denial that specifically
identifies the taxes, penalties, and interest (and the amounts thereof) that the taxpayer asserts are not
due. Id. § 111.013(b). "[A] taxpayer has the burden to overcome a deficiency certificate's presumed
correctness with such evidence tending to support the contrary as would be conclusive, or evidence
which would be so clear and positive it would be unreasonable not to give effect to it as conclusive." 
Hylton v. State, 665 S.W.2d 571, 572 (Tex. App.--Austin 1984, no writ). Statutory exemptions
from taxation are subject to strict construction since they are the "antithesis of equality and
uniformity and because they place a greater burden on other tax paying businesses and individuals." 
Bullock v. National Bancshares Corp., 584 S.W.2d 268, 274 (Tex. 1979). All doubts as to the
availability of an exemption must be resolved in favor of the taxing authority and against the
claimant. Id. When no findings of fact or conclusions of law are filed, we must infer that the district
court made all necessary findings and conclusions to support the judgment. Torrington Co. v.
Stutzman, 46 S.W.3d 829, 842 (Tex. 2000).

 Texas imposes a sales tax on such things as the performance of taxable services or
the leasing of tangible personal property. See Tex. Tax Code Ann. §§ 151.005, 151.051 (West
2002). The gross receipts of a seller are presumed subject to the sales tax unless the seller accepts
a properly completed exemption certificate. Id. § 151.054; see, e.g., 34 Tex. Admin. Code
§ 3.356(h) (2002) (garbage collector may accept exemption certificate in lieu of taxes). A provider
of services is a "seller" under the Tax Code. See id. §§ 151.005, 151.008, 151.010. Thus,
appellants' services were presumed taxable unless they received exemption certificates.

 In Hylton, the court overruled a taxpayer's complaint that the comptroller and trial
court erroneously failed to reduce his tax liability by the amounts of sales that were exempt from
taxation. 665 S.W.2d at 573. The taxpayer hauled and sold sand, gravel, and clay. Id. at 572. In
response to the comptroller's delinquency certificate, the taxpayer and his wife testified that they
collected taxes on all sales in which the buyer did not produce an exemption certificate. Id. at 573. 
The taxpayer's accountants testified that they never saw exemption certificates in the taxpayer's files. 
Id. The taxpayer did not produce any exemption certificates received from purchasers, but the
accountants said they saw invoices on which someone noted that the sale was exempt. Id. The court
held as a matter of law that the trial court did not err by concluding that the taxpayer "failed to
present evidence which would overcome the delinquency certificate's presumed correctness." Id. 
The opinion indicates that the court was influenced somewhat in that case by the taxpayer's
deliberate destruction of his records to thwart federal agents who were investigating compliance with
the Mining Safety Act. Id. at 572-73.

 A lack of exemption certificates can defeat a taxpayer's claim of exemption despite
testimony and invoice notations indicating exemption. State v. Glass, 723 S.W.2d 325, 328 (Tex.
App.--Austin 1987, writ ref'd n.r.e.). In Glass, in response to the certificate of delinquent taxes on
sales of diesel fuel, the taxpayer produced invoices reflecting sales to various businesses and his
testimony that "all of the businesses purchasing the diesel fuel used it for tax-exempt purposes." Id.
at 327. The district court found that the sales were exempt from tax. Id. at 326. The court of
appeals reversed, finding that the evidence did not conclusively establish the exemption. Id. at 327. 
The court was unpersuaded by the blanket statement that all of the sales were exempt, and required
more direct evidence of entitlement to an exemption. Id. at 328. The court was unmoved by
testimony that the taxpayer's records were destroyed by fire, opining that "the taxpayer should be
able to produce evidence from the purchasing businesses themselves or from the Comptroller
indicating that the businesses possessed valid permits during the period in question [entitling them
to tax-free purchases], or at a minimum providing an explanation of why such evidence is
unavailable." Id. The court also held that the taxpayer failed to show conclusively that certain sales
were exempt as "non-highway use" because the taxpayer did not produce the statutorily required
signed statements of non-highway use from the producers. Id. at 326, 328. When the taxpayer
produced invoices stating that the sale was "not for highway use for drilling rigs," the court opined
that "[c]onclusive evidence under these circumstances would entail at a minimum some evidence,
other than Glass' testimony, that the diesel fuel was sold or delivered directly into the supply tanks
of the stationary equipment." Id. at 328. The court reversed the district court's take-nothing
judgment and rendered judgment that the taxpayer pay the amount in the delinquency certificate. 
Id. at 329.

 Appellants in this case produced records they contend overcame the delinquency
certificates' presumption of validity and proved as a matter of law that the district court's
delinquency award included over $300,000 in services that were exempt from taxes. Appellants
produced no exemption certificates for any of the services provided; Burnett testified that his
customers refused to supply a certificate when he performed tax-exempt services. Although at trial
appellants denied any tax liability, on appeal, they limit their claim of exemption to invoices listed
in an appendix attached to their brief. Conceding that the invoices not listed do not conclusively
establish nonliability, they contend that the listed invoices describe reclamation-related services
declared by the comptroller in advisory letters to be exempt from taxation. Appellants refer to a
letter opinion from the comptroller written to a taxpayer who asked about the taxable nature of
cleaning up and restoring a drilling site by backfilling water, reserve, and shale pits. Letter Op. Tex.
Comptroller No. 9609L1436A03 (1996). (2) The comptroller advised that "when the restoration is the
actual reclamation of an oil and gas lease site to the land's condition before the drilling activity was
begun, the charge for the restoration/reclamation is not taxed." Id. On appeal, the appellants in this
case request exemption for services listed on invoices with descriptions like "pump mud and water
pit down hole and backfill same," "pumping and closing pits," and "backfilling pits." Burnett
testified that appellants performed only exempt work.

 The State contends that appellants did not show themselves conclusively entitled to
exemptions. The State notes that Sundown's letterhead indicates that it offered a variety of services
and equipment related to oil production, some of which were not exempt. The State contends that
appellants overstate the importance of the opinions in the advisory letters from the comptroller's
office. The State notes that the letters are not specific to appellants, are not rules, and are not binding
conclusions that the services are not taxable. See Brinkley v. Texas Lottery Comm'n, 986 S.W.2d
764, 769 (Tex. App.--Austin 1999, no pet.). The State also notes that, even if the letters were
binding, they are conditioned on the facts presented in the letters, and appellants did not prove
conclusively that the services they provided fit within the fact scenarios of the letters. For instance,
one of the letters describes certain services as tax-exempt when performed to restore a leased site
to its predrilling condition. Letter Op. Tex. Comptroller No. 8906L0944B08 (1989). The State
reasons that the letter opinion implies that such services are exempt if provided once drilling has
ceased, and notes that the appellants' invoices do not show that drilling had stopped when they
provided the services.

 We conclude that the district court correctly determined that appellants did not
produce evidence that conclusively defeats the presumption of correctness accorded the
comptroller's certificates of delinquency. Appellants did not produce exemption certificates as
required to create a presumption of exemption. See Tex. Tax Code Ann. § 151.054. Appellants do
not cite statutes or rules providing that their work was exempt. Instead they rely on opinion letters
that are not binding and were limited to particular facts presented to the comptroller. See Brinkley,
986 S.W.2d at 769. Further, the invoices appellants produced are not sufficiently detailed to compel
the conclusion that the services described were exempt; for instance, the invoices do not set out the
circumstances surrounding the provision of services--i.e., the nature of the waste removed or the
status of oil production at the lease site. See Glass, 723 S.W.2d at 328. Nor does Burnett's general
testimony that his company provided only exempt services combine with the other evidence adduced
to provide conclusive proof to overcome the presumption that the certificates of delinquency are
correct. See id.


CONCLUSION


 Because we conclude that appellants failed to produce evidence that conclusively
defeated the presumed correctness of the comptroller's delinquency certificates, we affirm the
judgment.


 

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: October 24, 2002

Publish
1. Despite the death of Thad Sherman Burnett after the inception of this appeal, we use his
name (rather than that of his heirs or estate) in this opinion. See Tex. R. App. P. 7.1(a)(1).
2. The State argues that this Court cannot consider these opinion letters because appellants
mentioned only one of them at trial and did not introduce it into evidence. The comptroller has
posted these letters on a website--http://www.window.state.tx.us/taxinfo/sales, which contains an
archive that is searchable by the accession numbers in the letters. If the opinion letters are evidence,
this posting makes them susceptible to judicial notice. See Tex. R. Evid. 201. But the posting of
the advisory letters with the requesting party redacted indicates that the comptroller intends these
letters to guide all taxpayers. This implicit intent makes the letters less like evidence and more like
authority, albeit nonbinding authority.