# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00135-CV

**William G. Wimmer a/k/a William George Wimmer, Appellant**

**v.**

**The State of Texas and The City of Galveston, Texas, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GV102476, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellees the State of Texas and the City of Galveston, Texas (collectively, "the State") sued appellant William Wimmer to recover delinquent sales taxes. The State filed a traditional motion for summary judgment, and following a hearing on the motion, the trial court granted it. Wimmer appeals from that summary judgment, arguing that the trial court erred in granting the motion and in imposing injunctive relief and awarding attorney's fees against him. We will overrule these issues and affirm the trial court's judgment.

## BACKGROUND

The State filed its petition on August 22, 2001, alleging that Wimmer was engaged in business in Texas involving the sale of taxable items as defined in chapter 151 of the tax code; he failed to file monthly sales tax reports as required by chapter 151; and he failed to remit the

amounts of sales tax due. Attached to the petition were certificates from the comptroller of public accounts, *see* Tex. Tax Code Ann. § 111.013 (West 2001), evidencing that Wimmer owed the State $26,344.25 and the City of Galveston $3,690 in unpaid sales and use taxes, interest, and penalties. In addition to those sums, the State sought a permanent injunction, enjoining Wimmer from continuing in the business of making taxable sales until he paid all taxes, penalties, and interest owed to the State. Finally, the State requested attorney's fees.

A few days after the State filed its petition, Wimmer filed for bankruptcy. The bankruptcy was dismissed on January 8, 2002, but Wimmer filed for bankruptcy again a little more than a month later. The second bankruptcy filing was also dismissed with prejudice to refiling. After the dismissal of the second bankruptcy proceeding, the State amended its petition to add additional periods of unpaid tax that accrued during Wimmer's bankruptcies. The total sought under the amended petition was $36,917 in taxes, penalties, and interest.

The State then filed a motion for summary judgment and issued discovery, including a request for admissions. Wimmer filed a response to the motion for summary judgment, claiming he owed only $16,498.45 in taxes, penalties, and interest and objecting to the State's summary judgment evidence supporting its claim for attorney's fees. Attached to the response was his own affidavit and a payment chart that, it appears, he prepared himself. He did not respond to the discovery requests.

After allowing the State twice to add summary judgment evidence, the trial court held a hearing on its motion, which Wimmer did not attend. The trial court granted the State's motion and rendered judgment against Wimmer in the amount of $37,356.15 for unpaid taxes, penalties, and interest, plus court costs and attorney's fees. From this judgment, Wimmer appeals.

2

**Summary Judgment**

*Standard of Review*

Because the propriety of a summary judgment is a question of law, we review the trial court's decision de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). The standards for review of a traditional summary judgment are well established: (1) the movant must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

*Default Summary Judgment*

As a preliminary matter, we must address Wimmer's contention that the trial court erred in granting a "default" summary judgment. Wimmer directs our attention to a notation on the trial court's docket sheet that states "default summary judgment" by the date that the summary judgment was rendered. Relying on this notation, Wimmer contends that the trial court erroneously rendered a default summary judgment because he failed to appear at the summary judgment hearing.

It is well settled that a trial court may not grant a summary judgment by default, that is, the court may not grant a summary judgment because the nonmovant failed to respond to the motion when the movant's summary judgment proof is legally insufficient. *City of Houston v. Clear*

3

*Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The movant must still establish his entitlement to summary judgment by conclusively proving all essential elements of his cause of action or defense as a matter of law. *Id.*

Notwithstanding the notation on the trial court's docket sheet, the final summary judgment in this case states that the trial court found the State was entitled to judgment "after considering [the State's] Motion for Summary Judgment, the Comptroller's Certificates and Attorney's Fee Affidavit attached thereto, and all the pleadings on file in this cause." Thus, this is not a case in which the trial court based its decision solely on the non-movant's failure to respond or attend the hearing. To the contrary, the State presented competent summary judgment evidence in support of its motion, and the judgment reflects that the court reviewed this evidence in reaching its decision.

Moreover, we may not rely on the docket sheet to discern the grounds upon which the summary judgment was granted. *See Hamilton v. Empire Gas & Fuel Co.*, 110 S.W.2d 561, 566 (Tex. 1937) (holding that docket entries, affidavits, or other like evidence can neither change nor enlarge judgments or orders); *Richardson v. Johnson & Higgins of Tex., Inc.*, 905 S.W.2d 9, 11 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (holding that it is the court's order that counts, not the stated reason or oral qualifications). We may look only to the grounds stated in the summary judgment, and if no grounds are specified, we must affirm the judgment on any meritorious ground raised in the summary judgment motion. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872-73 (Tex. 2000) (citing *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)); *see Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 199 (Tex. App.—Texarkana 1993, writ

4

denied) (holding that judgment must be affirmed if there is any legal ground presented to trial court on which it can be upheld, even if court's reason was erroneous). Nowhere in the summary judgment does the trial court recite that the basis for its ruling was Wimmer's failure to appear at the hearing. We therefore overrule Wimmer's complaint that the trial court erroneously granted a default summary judgment.

### *Summary Judgment Evidence*

Wimmer contends in his second issue that the trial court erred in granting summary judgment because the State's evidence was conflicting and legally insufficient. Attached to the State's motion for summary judgment were two certificates of delinquency from the office of the comptroller evidencing the amount of taxes owed along with penalties and interest. The State relied on this evidence to establish that it is entitled to judgment as a matter of law in the amount reflected on the certificates.

A taxpayer attempting to deny responsibility for taxes faces a heavy burden once the comptroller produces a certificate showing the amount of taxes that are delinquent. *Sundown Farms, Inc. v. State*, 89 S.W.3d 291, 293 (Tex. App.—Austin 2002, no pet.). Section 111.013 of the tax code expressly provides that a certificate of delinquency from the comptroller is prima facie evidence of the stated amount and the delinquency of the taxes, penalties and interest, after all just and lawful offsets, payments, and credits. Tex. Tax Code Ann. § 111.013(a); *see State v. Glass*, 723 S.W.2d 325, 327 (Tex. App.—Austin 1987, writ ref'd n.r.e.); *Hylton v. State*, 665 S.W.2d 571, 572 (Tex. App.—Austin 1984, no writ). The comptroller's delinquency certificates create a presumption of the correctness of the taxing authority's claim, which the taxpayer has the burden to overcome.

5

*Hylton*, 665 S.W.2d at 572; *Baker v. Bullock*, 529 S.W.2d 279, 281 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.); *see also Glass*, 723 S.W.2d at 327.  If unrebutted, the certificates are sufficient to establish as a matter of law, the amount the taxpayer owes.  *Baker*, 529 S.W.2d at 281.  In order to overcome the presumption of correctness, the taxpayer must provide evidence "tending to support the contrary as would be conclusive, or evidence which would be so clear and positive it would be unreasonable not to give effect to it as conclusive."  *Hylton*, 665 S.W.2d at 572 (citing *Nu-way Oil Co. v. Bullock*, 546 S.W.2d 336 (Tex. Civ. App.—Austin 1976, no writ); *Smith v. State*, 418 S.W.2d 893 (Tex. Civ. App.—Austin 1967, no writ)).  Given the statutory presumption of correctness that accompanies a comptroller's certificate of delinquency, the State satisfied its summary judgment burden when it produced those certificates.  Wimmer bore the burden of producing conclusive contrary evidence.

Wimmer counters that the comptroller's certificates conflict in terms of the amounts owed and that the amount ultimately awarded is not consistent with the comptroller's certificates.  Attached to the State's first amended petition was a certificate evidencing a total delinquency of $36,917.  An updated certificate was attached to the State's motion for summary judgment, reflecting a total of $37,265.01 in delinquent taxes.  In the final summary judgment, the trial court awarded a total amount of taxes, penalties, and interest of $37,356.15—a difference of $91.14 from the amount in the comptroller's certificate attached to the summary judgment motion.

The final summary judgment award was based on the State's motion for summary judgment and the evidence attached to it, not on the certificate attached to the State's first amended petition.  *See Clear Creek Basin Auth.*, 589 S.W.2d at 678 (contentions must be expressly presented

6

in summary judgment motion or in response to motion; pleadings are not to be considered in determining whether fact issues are presented in summary judgment motions). The certificate attached to the summary judgment motion provides that the total amount due was for the period ending October 29, 2002, the date originally scheduled for the summary judgment hearing. It further provides that "additional interest will accrue at $4.34 per day after October 29, 2002." The summary judgment motion confirms that the amount reflected in the certificate is for the total amount due "to the date of the hearing set on this Motion, with interest calculated to that date." The summary judgment hearing, however, did not take place on October 29, as scheduled; it was continued until November 19, twenty-one days later. This reveals that the difference between the amount of delinquent taxes reflected in the summary judgment evidence and the amount ultimately awarded can be accounted for by adding to the amount reflected in the comptroller's certificate the interest that accrued between the original date of the hearing and the actual hearing date, that is, by multiplying twenty-one days (the number of days between October 29 and November 19) by $4.34 (the amount of additional interest per day), which amounts to $91.14, and adding it to the $37,265.01 total. Thus, the final summary judgment is not inconsistent with the summary judgment evidence. In fact, it is completely consistent, as the trial court calculated the total amount owed based on the comptroller's certificate, which was attached to the motion.

Wimmer argues that even if the comptroller's certificates were competent prima facie evidence of the total amounts owed, that prima facie evidence was controverted by Wimmer's own affidavit, which was attached to his response to the summary judgment motion. As explained above, once the State proffered the tax delinquency certificates, the burden then shifted to Wimmer to prove

7

conclusively that the certificates were incorrect. *See* Tex. Tax Code Ann. §§ 111.013(a), 151.603 (West 2002); *Sundown Farms*, 89 S.W.3d at 293 (certificate is prima facie evidence of both the delinquency *and* the amount owed). He must do so with evidence that is so clear and positive that it would be unreasonable not to give it effect as conclusive. *Sundown Farms*, 89 S.W.3d at 293; *Hylton*, 665 S.W.2d at 572. Only after the presumption of correctness is overcome by the production of conclusive evidence does an issue arise that must be decided by a preponderance of the competent evidence. *Hylton*, 665 S.W.2d at 572-73.

In his response, Wimmer attached an affidavit and a table purporting to be an accounting of taxes, penalties, and interest owed, totaling $16,498.45. In his affidavit, Wimmer avers that the State's certificates reflect taxes due for a time period during which Wimmer paid all taxes in full, and therefore, the certificates are inaccurate, do not show the proper credit for the payments, and are excessive. He also claims that he made substantial payments on delinquent taxes, penalties, and interest accrued during other time periods. Those payments, he contends, are reflected in the chart he prepared and attached to his response.

Wimmer's evidence is not clear and positive. The affidavit amounts to no more than conclusory statements, and the chart adds nothing to those statements. There is nothing provided by Wimmer that supports the figures included in his chart. *Cf. Glass*, 723 S.W.2d at 328 (holding that conclusive evidence entails more than taxpayer's testimony to establish applicability of tax exemption); *Hylton*, 665 S.W.2d at 573 (holding that taxpayer's testimony and records reconstructed by taxpayer after he burned the originals were insufficient as a matter of law to overcome presumption of correctness). Even if we were to presume that the figures represented in the chart

8

are accurate (although there is no evidence to support the payments he alleges he made), Wimmer's method of calculating the amount owed is not shared by the State. For example, there is nothing on the chart indicating whether the payments were timely made. And Wimmer credits the entire amount of a particular payment to only the tax that he alleges was due for a certain period, but does not credit any of his payment to taxes that were delinquent from earlier periods or to any penalty or interest that may have accrued on an untimely payment. *See* 34 Tex. Admin. Code § 3.2 (West 2003) (nondesignated payments are applied by comptroller in order of oldest liabilities first, then after paying tax, comptroller applies payment to penalty and interest). In addition, Wimmer does not calculate interest until he arrives at a grand total of tax due. Taxes, however, begin accruing interest sixty days after the due date. *See* Tex. Tax Code Ann. § 111.060(c) (West 2001). We therefore hold that Wimmer's evidence is no more than a vague allegation that the comptroller erroneously ascertained the amount of taxes due. These conclusory statements are insufficient to rebut the presumption of correctness afforded the comptroller's certificates and fail to raise a fact issue as to Wimmer's tax liability. *See Baker*, 529 S.W.2d at 281 (holding that vague allegations by taxpayer seeking refund that Comptroller's method of ascertaining tax due was incorrect not sufficient to merit consideration by trier of fact).

**Injunctive Relief**

Wimmer complains that the trial court improperly enjoined him from continuing to operate a business because the State's summary judgment evidence was insufficient for an injunction and because the State cannot enjoin a person who is not in business at the time of the injunction. Wimmer asserted in his response to the summary judgment motion that he does not now own or

9

operate a business. Thus, argues Wimmer, the court may not issue an injunction because the State did not show that he will engage or is engaging in the activity sought to be enjoined. He also challenges the court's jurisdiction to issue an injunction because a court lacks jurisdiction to enjoin conjectural or speculative events, the controversy was not yet ripe for an injunction, and the issues were moot.

Section 111.011(a) of the tax code allows the State to enjoin taxpayers who fail or refuse to meet their obligation to file reports and remit taxes that are due from their business until the report is filed and the tax is paid:

> If a person engaged in a business the operation of which involves the receipt, collection, or withholding of a tax imposed by this title fails to file a report or pay the tax as required by this title, the attorney general may bring suit for an injunction prohibiting the person from continuing in that business until the report is filed and the tax is paid.

Tex. Tax Code Ann. § 111.011(a) (West 2001). Where the right to injunctive relief is authorized by statute, the statute controls. *Hale County v. Davis*, 572 S.W.2d 63, 66 (Tex. Civ. App.—Amarillo 1978, writ ref'd n.r.e.); *Biggs v. Red Bluff Water Power Control Dist.*, 131 S.W.2d 274, 276 (Tex. Civ. App.—El Paso 1939, writ ref'd).

According to the record, Wimmer does not deny that he owes taxes; he only disputes the amount. Thus, the State conclusively established that Wimmer failed to pay the tax, one of the requirements for injunctive relieve under section 111.011. It is also clear from the summary judgment evidence that Wimmer had engaged in a business the operation of which involved the receipt, collection, or withholding of a tax. In the affidavit attached to his response to the summary

10

judgment motion, however, Wimmer avers that he "do[es] not now own or operate any business." This Court has held that where a specific statute authorizes the injunction issued, the court need find only that the statutory provisions are satisfied and need not otherwise determine future probable injury. *Shields v. State*, 27 S.W.3d 267, 273 (Tex. App.—Austin 2000, no pet.). In this case, it is clear that Wimmer operated his business at least during the periods at issue in the lawsuit, from April 2000 thru May 2002. He did not allege that he ceased operating that business until he filed his response to the summary judgment motion, one month before the summary judgment hearing. The State satisfied the statutory requirements by establishing that Wimmer "engaged in a business the operation of which involves the receipt, collection, or withholding of a tax" and that he failed to pay the tax. Tex. Tax Code Ann. § 111.011(a). The State was therefore entitled to "bring suit for an injunction prohibiting [Wimmer] from continuing in that business until . . . the tax is paid." *Id.* We therefore hold that the State established as a matter of law its entitlement to an injunction and the trial court properly exercised its jurisdiction in granting injunctive relief.

Finally, Wimmer complains that the State did not provide him notice that it intended to seek an injunction as mandated by section 111.011(c) of the tax code, thus violating his right to due process. *See id*. § 111.011(c). That section provides: "Prior to filing suit for an injunction, the attorney general shall send written notice by certified mail requesting that the person shall cease any wrongful collections of taxes allowing 15 days for compliance from the date of notice." *Id.* A close reading of the section suggests that the State need only provide notice when it is seeking an injunction to enjoin a person from wrongfully collecting taxes, as described in subsection (b) of section 111.011. Indeed, subsection (b) refers to the notice provision, providing that if a person fails

11

to cease wrongfully collecting taxes within fifteen days after receiving notice from the attorney general, the attorney general "shall" bring suit for an injunction. *Id*. § 111.011(b). The suit filed against Wimmer was brought under subsection (a), not (b), for failing to pay taxes.

Even if subsection (c) does apply to the suit against Wimmer the record reflects that the State complied with that notice provision. The statute requires that the attorney general "send" notice by certified mail before suing for an injunction. In this case, the State sent written notice by certified mail to Wimmer's post office box address. Delivery was attempted three times, but the letter was returned unclaimed.

Wimmer claims there is nothing in the record establishing that the address to which the notice was sent was his actual address. In fact, the petition with which he was served and the motion for summary judgment were sent to an address different from the one to which the notice was sent. We note that Wimmer did not assert in the trial court, nor does he assert on appeal, that the address to which notice was sent was not his post office box address. In any event, if the notice was sent to the wrong address, any error was harmless. The purpose of the notice, according to the statute, is to provide the party an opportunity to cease the wrongful collection of taxes. Wimmer was not accused of wrongfully collecting taxes. Furthermore, there is no dispute about whether Wimmer was properly served with the State's petition, which includes a request for injunctive relief. Thus, we hold that Wimmer's due process rights were not violated.

**Attorney's Fees**

Wimmer complains about the trial court's award of attorney's fees against him in the amount of $3,500. The amount of an award of attorney's fees rests within the sound discretion of

the trier of fact, and its judgment will not be reversed absent a clear showing of abuse of discretion. *Morales v. Ellen*, 840 S.W.2d 519, 526 (Tex. App.—El Paso 1992, writ denied). For purposes of summary judgment, an attorney's affidavit can sufficiently establish the reasonableness of attorney's fees. *Querner Truck Lines, Inc. v. Alta Verde Indus., Inc.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ). An affidavit filed by the movant's attorney that sets forth his qualifications, his opinion regarding reasonable attorney's fees, and the basis for his opinion will be sufficient to support summary judgment, if uncontroverted. *Enell Corp. v. Longoria*, 834 S.W.2d 132, 135 (Tex. App.—San Antonio 1992, writ denied).

The State attached to its motion for summary judgment an attorney's fees affidavit, in which the State's attorney asserted that he had personal knowledge of the facts in the affidavit, he was a duly licensed attorney and assistant attorney general, he was familiar with the applicable statute allowing for recovery of attorney's fees in these types of cases, *see* Tex. Gov't Code Ann. § 2107.006 (West 2000), and that taking into consideration the amount in controversy, the nature of the case, and the pleadings on file, it was his opinion that a reasonable attorney's fee in this case would be the sum of $3,500. In his response to the summary judgment motion, Wimmer objected to the State's attorney's fees affidavit, arguing that it failed to specify the number of hours worked and the hourly rate and was otherwise defective. The State responded to Wimmer's objections by filing a second affidavit of attorney's fees in which the State's attorney itemized the duties performed and the number of hours spent on each duty, totaling 17.5 hours. The affidavit also included an hourly rate of $200 per hour; thus, the $3,500 figure was arrived at by multiplying the 17.5 hours by $200. Wimmer did not set forth any qualifications of his own to dispute the reasonableness of the

13

attorney's fees. Without conflicting summary judgment proof, the State's evidence was sufficient to support summary judgment as to attorney's fees. *See Enell Corp.*, 834 S.W.2d at 135; *Querner Truck Lines, Inc.*, 747 S.W.2d at 468-69. Wimmer's criticism of the amount of attorney's fees sought did not raise a fact issue regarding the reasonableness of the attorney's fees. *See Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.—Houston [1st Dist.] 1991, writ denied) ("To create a fact issue, the non-movant's attorney must file an affidavit contesting the reasonableness of the movant's attorney's fee affidavit."); *American 10-Minute Oil Change, Inc. v. Metropolitan Nat'l Bank-Farmers Branch*, 783 S.W.2d 598, 602 (Tex. App.—Dallas 1989, no writ) (same); *Querner Truck Lines, Inc.*, 747 S.W.2d at 468-69 (same). We therefore hold that the trial court did not abuse its discretion in awarding attorney's fees in the amount of $3,500.

## CONCLUSION

Having overruled all of Wimmer's issues on appeal, we affirm the summary judgment of the trial court.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Patterson

Affirmed

Filed:   February 5, 2004

14